18-2-0-8-3 Mr. Little, we do have a rule just so you know that we don't withhold money from without a prior order allow attorneys to bring in an iPad or some other electronic device, but I exhibited some lenity in your case, your request this morning. And I very much appreciate that, Your Honor. Okay. I'm Kevin Little, and I'm the attorney for the appellant in this case, Jacobed Rodriguez-Coss. Your Honor, I'd like to dedicate the majority of my time to the retaliation claim because I think that unfortunately the district court greatly oversimplified the pattern of complaints and retaliation, and on that basis found that there was no causal connection between the two. Ms. Rodriguez-Coss did not complain only in the summer of 2012. As she stated in her administrative statement on pages 488 to 490, she began complaining in the summer of 2012 about a case that she had been assigned in the fall of 2011, but repeatedly thereafter complained, including a meeting that was held in October of 2013 with herself and management of the capital case section, where, again, the record shows on page 129 that management perceived this complaint as one alleging discrimination. Thereafter, Ms. Rodriguez-Coss made the same complaint essentially to the director of human resources, Mr. Machino. That's indicated and summarized in a document that appears on page 364 of the appendix, where, again, part and parcel of that complaint was that men were not being required. There was at least one male who was not being required to travel in the capital case section. Ms. Rodriguez-Coss, as she indicated, and this is a dispute that was not acknowledged by the court, she did not accept lock, stock, and barrel the entirety of this assignment when she first took it. What she accepted was to indict the case and handle the case, and she was led to believe that at some point the long-term assignment of this case, including for purposes of trial, would be reconsidered. However, after Ms. Rodriguez-Coss complained, there was no reconsideration, and I think that's an important fact because the record shows that similar complaints by male attorneys, similar lifestyle concerns by male attorneys had been addressed and had been accommodated, but for some reason after she complained, beginning in 2012, hers were not. This all comes to a head in the fall of 2013, where Ms. Rodriguez-Coss once again makes these complaints, and that is followed, unfortunately, by a December 2013 announcement that her flex-a-place agreement is only being continued for two more months. And perhaps, Your Honors, the greatest and clearest statement of retaliatory intent in this record is testimony that Mr. Carwile made at his deposition, wherein he said that the purpose of giving only a two-month extension of this flex-a-place agreement was to, if Ms. Rodriguez did not agree to handle all aspects of the Stone case, they were contemplating ending her flex-a-place agreement altogether. If you look at what was going on up until December of 2013, Ms. Rodriguez-Coss had not refused to handle any aspect of this case. She had never missed a hearing. She had never missed an assignment, although there were obviously several that were late, and the record is silent as to the cause of that, whether it was workload-related, whether she was indeed the assigned attorney responsible for all of those late filings. That was never investigated. But notwithstanding that . . . Could you explain that a little bit? It sounds like in the Stone case, Ms. Rodriguez-Coss was reprimanded repeatedly by two judges, not just for late filings but also deficient ones, and I don't see that addressed in your papers, but perhaps you could direct me to where you explain why that isn't a legitimate, non-discriminatory basis for an adverse employment action. Yes, Your Honor. With respect to the findings, and they are listed in the record, I think there were nine orders that made reference to late filings. All of those orders did not penalize late filings themselves, and there were actually fewer than nine. Only one of those orders referred to a filing that mentions Ms. Rodriguez-Coss directly, and that was in a hearing transcript that I believe was from October of 2013. The rest of the orders cited the government, and Ms. Rodriguez-Coss was not the only attorney from the government who was handling this case. There was another attorney from the U.S. Attorney's Office handling the case. There were actually two attorneys from the local U.S. Attorney's Office handling the case in addition to her. There was a Mr. Rooney and a lower-level trial attorney who rotated depending on the status of personnel in that division. It's important, however, Judge Park, also to consider, and again, this is somewhat related to discrimination, but I think this is a case where the fact pattern shows that all of this dovetails into retaliation as well. We had a male attorney, Mr. Peterson, and this is in Amanda Haynes' declaration on page 1324 of the record, where Mr. Peterson violated the Pettit policy, failed to disclose exculpatory evidence, received no sanction whatsoever. As a matter of fact, he was recognized that same year for his fine work and given very desirable assignments. As Judge Lohier, you stated very recently in the Duplan case. I have no memory of that case. An inference of causation for purposes of a retaliation case is drawn when one looks at the facts as a whole. Proof of a causal connection can be established indirectly by showing protected activity as followed by discriminatory treatment, and that's exactly what we have here. If you look at how this case was handled and the disparate manner in which Ms. Rodriguez's requests for accommodation were handled after the summer of 2012 when she began to make these complaints that males were being treated more favorably, the record shows quite clear that her management stubbornly refused only in her instance and only a jury could conclude because she complained that she would not be accommodated where nearly simultaneously male colleagues were being accommodated. There was also a refusal to accommodate her request that there be a delineation between who would take the lead in the penalty phase versus the guilt phase, which had also been provided, and I think there was a case in New Mexico involving Mr. Warble where that situation had been agreed upon. The record just simply shows that— Apparently what you are relying on in connection with the retaliation claim— Yes, Your Honor. —is first how close in time it was to her complaint, and you say that she continued to complain to file or to make these complaints after the summer of 2012, and also this deposition testimony. That's correct, the deposition testimony and her administrative statement testimony. And if you take the entire pattern of antagonism by management, followed her summer 2012 complaint and continued throughout the remainder of complaints, and most strikingly, after she filed her informal EEO complaint on the 6th of January 2014, the very next day she was reprimanded, and immediately upon the tolling or the running out of her two-month flex-a-place agreement, her flex-a-place agreement was eliminated altogether, even though management knew that in her special circumstances that was tantamount to termination. You've reserved two minutes for rebuttal, Mr. Little, so we'll hear from your adversary. Thank you, Your Honor. Thank you. Good morning. May it please the Court. My name is Kruthi Daria, and I'm an assistant United States attorney, and I represent Attorney General Barr in this appeal. For every action that Ms. Rodriguez caused complaints about, the district court properly held that her employer provided legitimate, non-discriminatory reasons for these actions. She does not deny these reasons, dispute their accuracy, or offer admissible evidence that the reasons were pretextual. It's undisputed that the case assignments were made based on the needs of the office. She refused to litigate the Stone case as scheduled, and therefore she was issued a letter of reprimand for it. Her flex-a-place agreement was not renewed because of her failure to meet court orders and deadlines in the Stone case. In the Stone case, on the docket sheet, she represented the United States as well as the local AUSA, and a review of the transcript shows that she was the one that addressed the court. In October of 2013, the district court said that the failure of the attorneys representing the United States to abide by court orders and deadlines undermined their credibility with the court, and the counsel is forewarned that the court is seriously considering an order to show cause as to why government counsel should not be held in contempt for its failure to meet court order deadlines. As for the retaliation claim, while the brief speaks mostly about temporal proximity and calls a connection, she doesn't establish the elements of retaliation complaint, of retaliation as to defeat a motion for summary judgment. It's not enough to rely solely on temporal proximity. She has to show . . . The judge just said that she's also relying on this testimony. On her own deposition testimony. But also on that of . . . I can't remember his name, but maybe the head of the unit? Mr. Carwell and Mr. Kinsey both . . . Carwell. Yes, Mr. Carwell and Mr. Kinsey both testified that they found out about the Stone orders in February of 2014. And what they found out about the Stone orders is when they decided to not renew her flex place agreement at the end of 2014. And I believe the EEO complaint was filed on January 22nd of 2014. And even if they can establish the temporal proximity, that establishes the primal fascia case. And once they establish a primal fascia case, the burden shifts to the defendant to submit information that they have a legitimate, non-discriminatory reason for its actions. And once the defendant is able to do that, the influence of retaliation dissipates. And then the plaintiff has to show that the desire to retaliate was the but-for reason. And she has to show that not only is the reason offered false, but that discrimination is the reason for its action. But she doesn't do so here. She doesn't deny the Stone orders. She doesn't deny the judicial criticisms. She doesn't deny that she was not going to try the case as scheduled because of her personal life. Were there any men who were part of this Stone case who were also criticized, or who one might infer were also criticized by these federal judges? She worked with the local AUSA from the Eastern District of California, and the district judge criticized them both. The district judge and the magistrate judge criticized the attorneys representing the United States, but that the AUSA is not part of the capital case section, which is a section Ms. Rodriguez-Coste was a part of. I am happy to answer any further questions the Court may have. Otherwise, I respectfully rest on my papers. Thank you very much, Ms. Little. Your Honors, I must take issue with my adversary's characterization that it's undisputed that Ms. Rodriguez-Coste refused to handle the assignment. There's actually nothing in the record that shows she refused to handle the assignment. What the record shows is that she complained that the assignment was not only unfair given her personal circumstances, but also reflected more favorable treatment to male CCS attorneys than her being a female CCS attorney. With respect to, it's also very, I think, important for the Court to understand that there was nothing new that had occurred in the Stone case in terms of any failures between the time of the two-month limited extension of Ms. Rodriguez-Coste's flex-a-place agreement in December 13 and the decision in February of 14 to eliminate it altogether. As Mr. Kinsey himself says- Are there any cases in which the non-renewal of a flex-a-place agreement can be considered an adverse employment action? It seems by its nature to be flexible and not something that an employee necessarily has an entitlement to. I'm wondering if there are any cases in which the non-renewal of that is deemed to be an adverse employment action. Your Honor, Judge Park, I think the answer might be different in the context of either a retaliation claim or a discrimination claim. In a discrimination claim, as I think the district court cited, they ultimately found under Ms. Rodriguez-Coste's special circumstances where the flex-a-place agreement termination was tantamount to firing her, that ultimately it was an adverse employment circumstance. But I think very clearly for purposes of retaliation under the new SAR standard where all an employee has to prove is that the action taken against her has a tendency to make her more reluctant, or a reasonable employee, more reluctant to make complaints in the future, I think the evidence is very clear that for purposes of retaliation this was an adverse action. And Burlington, I mean, well before the SAR, right? Yes. Thank you, Your Honor. Unless the court has any further questions. Thank you very much. We will reserve the decision.